**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Willie Lee Parker,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-15-1130-PHX-JAT (JFM)

**Report & Recommendation**
**on Petition for Writ of Habeas Corpus**
**and Motion for Release**

## I.    MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Phoenix, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 19, 2015 (Doc. 1).  On August 19, 2015 Respondents filed their Limited Answer (Doc. 11).  Petitioner filed a Reply on September 21, 2015 (Doc. 14).  Petitioner supplemented the record on September 4, 2015 (Doc. 13), Respondents supplemented on December 8, 2015 (Doc. 19) and February 11, 2016 (Doc. 36).  Petitioner again supplemented on March 4, 2016 by filing his own Affidavit (Doc. 40).  Respondents supplemented their Limited Answer and the record on April 1, 2016 (Doc. 42).   Petitioner filed a supplemental Reply (Doc. 49) on May 6, 2016 (referencing records appended to an earlier supplemental reply (Doc. 47)).

In addition, on May 11, 2016 Petitioner filed a Motion for Release Pending Review (Doc. 50), to which Respondents responded (Doc. 51).

The Petitioner's Petition and motion are now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local

1

Rules of Civil Procedure.

## II.   RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A.   FACTUAL BACKGROUND AND PROCEEDINGS AT TRIAL

In disposing of Petitioner's Petition for Review in his post-conviction relief proceedings, the Arizona Court of Appeals summarized Petitioner's convictions as follows:

> Parker pled guilty to one count of aggravated driving under the influence ("DUI") in three separate cases; the trial court sentenced him to stipulated, concurrent terms of ten years' imprisonment for each count. The counts were aggravated because Parker committed each DUI while his driver's license or privilege to drive was suspended, canceled, revoked, or refused, or while a restriction was placed on his license as a result of a prior DUI.

(Exhibit VV, Order 4/1/14.)  (Exhibits to the Answer, Doc. 11, are referenced herein as "Exhibit ___.")  (*See* Exhibits D, E, H, I, L (Complaints and Indictments); Exhibits F, J (Alleg. of Priors); Exhibits V, Plea Agreements; Exhibit A, M.E. 1/7/11.)

The three prosecutions related to DUI offenses on July 9, 2008 (Exhibit L), October 17, 2008 (Exhibits D, E), and March 5, 2009 (Exhibits H, I).

Sentence was issued in the three cases on February 8, 2011.  (Exhibit B, Sentence CR2008-165225-001 DT, Sentence CR2009-180397-001 DT, and Sentence CR2010-005826-001 DT.)

### B.   PROCEEDINGS ON DIRECT APPEAL

Petitioner did not file a direct appeal.  (Petition, Doc. 1 at 2.)

Moreover, as a pleading defendant, Petitioner had no right to file a direct appeal. *See* Ariz.R.Crim.P. 17.1(e); and *Montgomery v. Sheldon*, 181 Ariz. 256, 258, 889 P.2d 614, 616 (1995).

### C.   PROCEEDINGS ON POST-CONVICTION RELIEF

On May 6, 2001, 87 days after being sentenced, Petitioner filed with the trial court a Motion for Extension of Time to File Rule 32 (Exhibit W), seeking an

unspecified extension of time to file a petition for post-conviction relief ("PCR").  That motion was never ruled upon.

On July 11, 2011, some 153 days after being sentenced, Petitioner filed with the trial court a Notice of Post-Conviction Relief (Exhibit X).  That Notice was dated July 7, 2011 (*id.* at 2.)

Counsel was appointed (Exhibit Y, M.E. 7/13/11), who ultimately filed a Notice of Completion (Exhibit Z) evidencing an inability to find an issue for review.   On September 16, 2011, the PCR court granted leave for Petitioner to file a *pro per* petition, and set a deadline of 45 days, *i.e.* by Monday, October 31, 2011.  (Exhibit AA, M.E. 9/16/11.)   Petitioner did not do so, and the proceeding was dismissed on November 1, 2011.  (Exhibit CC, M.E. 11/1/11.)

On November 2, 2011, Petitioner filed his *pro per* PCR petition (Exhibit EE), dated October 28, 2011.  The PCR court *sua sponte* vacated the dismissal, and set a briefing schedule on the petition.  (Exhibit DD, M.E. 11/3/11.)

On February 8, 2012, the PCR court dismissed the PCR petition as untimely, rejecting arguments that the claim was founded upon newly discovered evidence. (Exhibit HH, M.E. 2/8/12.)

Petitioner then filed a Motion for Rehearing (Exhibit II) and Motion for Reconsideration (Exhibit LL), seeking reconsideration of the court's dismissal.   The motions were denied.  (Exhibit KK, M.E. 5/16/12; Exhibit MM, M.E. 6/12/12.)

On July 2, 2012, Petitioner filed a Motion to Extend Time for Filing Petition for Review (Exhibit NN).  The motion was denied.  (Exhibit OO, M.E. 7/30/12.)  Petitioner sought reconsideration (Exhibit PP) and the PCR court granted an extension of time (through November 29, 2012) for Petitioner to file a delayed "notice of appeal."  (Exhibit RR, M.E. 11/9/12.)

On December 5, 2012, Petitioner filed his "Notice of Delayed Appeal" (Exhibit SS), again requesting an extension of time.  The Arizona Court of Appeals granted Petitioner an extension through February 21, 2013. (Exhibit TT, Order 1/8/13.)

Petitioner ultimately filed a Petition for Review (Exhibit UU), arguing his PCR petition had been wrongly deemed untimely.  On April 1, 2014, the Arizona Court of Appeals filed a Memorandum Decision (Exhibit VV) granting review but denying relief.  The court concluded that Petitioner "could have raised his claims regarding the factual bases for the pleas and ineffective assistance of counsel in a timely petition for post-conviction relief."  The court further opined that the documents asserted failed to establish the merits of his claims, and that additional claims had been raised for the first time on petition for review.

Petitioner then sought reconsideration, which was denied, did not seek further review, and on September 25, 2014, the Arizona Court of Appeals issued its mandate. (Exhibit ZZ, Appellate Docket.)

## D.   **PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** – Almost nine months later, Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 19, 2015 (Doc. 1).  Petitioner includes a declaration under penalty of perjury that he placed the petition in prison mailing system on June 17, 2015.  (*Id.*at "11".)   Petitioner's Petition asserts the following three grounds for relief:

> (1) Petitioner's plea bargain and convictions violated the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments because his driving privileges were not suspended, revoked, or cancelled;
> (2) Petitioner received ineffective assistance of counsel in violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments because "his driving record(s) and license(s) should have been obtained before counsel considered any plea negotiations"; and
> (3) Petitioner's Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated because there is "newly discovered material evidence" showing that he was "licensed on the date he was cited."

(Order 7/10/15, Doc. 4 at 1-2.)

**Response** - On August 19, 2015, Respondents filed their Response ("Limited Answer") (Doc. 11).  Respondents argue that the petition is untimely, Grounds 1 and 2 are procedurally defaulted, and Grounds 1 and 3 are precluded by Petitioner's guilty

plea.

**Reply** - On September 21, 2015, Petitioner filed a "Limited Reply" (Doc. 14). Petitioner argues, in pertinent part, that he relied upon his motion to extend the time to file his PCR petition in delaying filing, he was diligent in pursuing his state remedies, the state court's delay beyond the permitted time in ruling caused his delay, and thus he is entitled to equitable tolling. (*Id.* at 1-2.) Petitioner further argues his *pro se* status entitles him to be held to less stringent standards in construing his filings. (*Id.* at 2.) He further argues that his allegations show that the state rules were inconsistently applied, and thus are inadequate. (*Id.* at 4.) He asserts counsel was ineffective for failing to advise Petitioner to file a protective habeas petition and motion to stay, and thus he should be entitled to statutory tolling. (*Id*) He argues that he was required to first exhaust his state remedies. (*Id.* at 5.) Petitioner further argues the merits of his claims.

**Motions to Expand Record** – On September 4, 2015, Petitioner filed his "Motion to Expand the Record and Extend the Petition" (Doc. 13). Petitioner sought to expand the record with additional documents from the Motor Vehicle Department in support of a procedural claim that he is actually innocent of the March 5, 2009 offense. The Court directed a supplementation of the record to include records from the MVD on the then applicable status of Petitioner's license. (Order 11/17/15, Doc. 16.) On December 8, 2015, Respondents supplemented the record with an Affidavit (Doc. 19, Exhibit) of an MVD manager avowing that Petitioner's license was in good standing on March 5, 2009.

Based upon this information, the Court directed Respondents to supplement their Answer to address the merits of at least the March 5, 2009 offense. (Order 12/10/15, Doc. 20 (vacated).)

Petitioner then moved to again expand the record (Doc. 22), this time arguing that his license was also in good standing at the time of the July 9, 2008 offense. The request was granted. (Order 1/20/16, Doc. 26.)

On February 11, 2016, Respondents filed a second Affidavit (Doc. 36) in which

the MVD employee related that having been advised that Petitioner utilized an alias of Maurice Davis (license B12374523), a search of records revealed a suspension in 1992, which remained in effect through the present.   Respondents also filed a Motion for Affidavit (Doc. 29), seeking an affidavit from Petitioner regarding his use of the aliases.

On March 4, 2016, Petitioner filed an "Affidavit" (Doc. 40) reasserting his claims that Respondents were improperly amending or supplementing their brief, and appearing to avow that "he have [only] in his 'personal name,' applied for a drivers license." (Doc. 40 at 1 (brackets in original).) He avows he had "never obtained a license under another [name], 'in this United States nor abroad,'" that he has only utilized a date of birth of "7-9-55, not any other date of birth," and that he only had a drivers license from the state of Arizona. (*Id*. at 1-2.) He expressly denied obtaining a license under his nickname of Billy Parker in another state.

The Court found Petitioner's avowals to be less than clear, and granted Respondents leave to conduct discovery.  (Order 3/17/16, Doc. 41.)

In response, Respondents argued (Doc. 42) *inter alia* that the police reports and pre-sentence reports for the March 5 offense (Exhibit B) shows that the license and MVD record under the name of Maurice Davis (B12374523) was Petitioner's license and record, and that the police report from the July 8, 2009 offense included reports of fingerprint matches between Petitioner and Maurice Davis (B12374523).   In addition, Respondents provide an Affidavit of the fingerprint technician avowing that Petitioner (Willie Lee Parker) is the same person whose fingerprints to whom the Maurice Davis license (B12374523) had been issued "with a possible chance of error of 0%." (Doc. 42, Exhibit B at 1.)  Respondents argue that Petitioner's procedural actual innocence claim must in any event fail because: (1) he fails to present any "newly discovered" evidence; (2) his guilty plea forecloses such a claim; (3) Petitioner fails to show his innocence of the other charges foregone, including equally serious (class 4 felony) related charges of aggravated DUI based on having drugs in his body.  And finally, Respondents argue that Petitioner's claim of ineffective assistance is, in any event, without merit because any

deficient investigation would have revealed Petitioner's guilt based upon the existence of the Maurice Davis license, and in any event it is likely counsel's advice would not have been changed nor would Petitioner have accepted the plea agreement.

On April 20, 2016, Petitioner filed a Reply (Doc. 47) arguing that Respondents' Response (Doc. 42) was untimely, and proffering an MVD report from November 2008, reporting in response to a record request for "Maurice Davis" that "No license or identification card was issued." (Exhibit A at "0000026".)   However, the included records also included an MVD report from 2009 in response to a similar request, reporting "Record destroyed per approved Records Retention and Disposition Schedule. Only computer record is available." (*Id.* at "0000047".)

The Court rejected Petitioner's timeliness objections, concluded that the Court would not consider Petitioner's filings on April 8, 2016 (Doc. 44) or that of April 20, 2016 (Doc. 47) in evaluating the procedural actual innocence claim, and directed Petitioner to file a "single reply to Respondents' Response (Doc. 42)." (Order 4/26/16, Doc. 48 at 2.)  The Court further cautioned Petitioner that a mere disparity in names was not sufficient to establish his actual innocence, "Rather, Petitioner bears the burden of showing it was not Petitioner - - again regardless of the names used." (*Id.* at 3-4.)

On May 6, 2016, Petitioner filed a Reply (Doc. 49), again complaining that Respondents' Response (Doc. 42) was delinquent, and arguing that Petitioner had presented "direct evidence of Maurice Davis never been issued a drivers license from M.V.D.", pointing to the exhibits to his earlier response (Doc. 47).  (Doc. 49 at 2.) Petitioner further argues that Respondents failed to meet their burden to prove Petitioner obtained a license under that name, and that records from November 7, 2008 show no license had been issue to Maurice Davis. (*Id.* at 2-3.)

**Motion for Release** – On May 11, 2016, Petitioner filed a Motion for Release Pending Review (Doc. 50).  Respondents have responded (Doc. 51), arguing no basis for release has been shown.  Petitioner has not replied, and the time to do so has expired.

7

### III.    APPLICATION OF LAW TO FACTS

#### A.    MOTION FOR RELEASE

In his Motion for Release Pending Review (Doc. 50), Petitioner argues that because of the merits of his claims and procedural actual innocence, he should be released pending the resolution of this case.  Respondents argue the request is without merit (Doc. 51).

Federal Rules of Appellate Procedure Rule 23 governs the release of a prisoner collaterally attacking a conviction through a habeas petition.  *See United States v. Mett*, 41 F.3d 1281, 1282 (9th Cir. 1994) (attacking a federal sentence); and *Marino v. Vasquez*, 812 F.2d 499, 507 (9th Cir. 1987) (attacking a state court sentence).   In connection with a habeas corpus petition, "this court has reserved bail for 'extraordinary cases involving special circumstances or a high probability of success.'" *Mett*, 41 F.3d at 1282 (quoting, in part, *Land v. Deeds*, 878 F.2d 318 (9th Cir. 1989)).   "Special circumstances" have been found to include such things as:

> (1) "a serious deterioration of health while incarcerated, and unusual delay in the appeal process", *Salerno v. United States*, 878 F.2d 317 (9th Cir. 1987); and
>
> (2) situations where "the sentence was so short that if bail were denied and the habeas petition were eventually granted, the defendant would already have served the sentence", *Landano v. Rafferty*, 970 F.2d 1230, 1239 (3rd Cir. 1992); and
>
> (3) continued civil detention of an alien for a three year period without a likelihood of removal, *Tam v. I.N.S.*, 14 F.Supp.2d 1184 (E.D.Cal. 1998).

Here, Petitioner proffers no special circumstances.

Nor, for the reasons discussed hereinafter, can the undersigned find a "high probability of success."

Accordingly, this motion should be denied.

/ /

/ /

/ /

8

**B.    TIMELINESS**

**1.    One Year Limitations Period**

Respondents assert that Petitioner's Petition is untimely.   As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts.   28 U.S.C. § 2244(d).   Petitions filed beyond the one year limitations period are barred and must be dismissed.  *Id.*

**2.    Commencement of Limitations Period**

**a)    Conviction Final**

The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[1]

For an Arizona noncapital pleading defendant, the conviction becomes "final" at the conclusion of the first "of-right" post-conviction proceeding under Rule 32. "Arizona's Rule 32 of-right proceeding for plea-convicted defendants is a form of direct review within the meaning of 28 U.S.C. § 2244(d)(1)(A)."  *Summers v. Schriro,* 481 F.3d 710, 717 (9th Cir. 2007).  "To bring an of-right proceeding under Rule 32, a plea-convicted defendant must provide to the Arizona Superior Court, within 90 days of conviction and sentencing in that court, notice of his or her intent to file a Petition for Post-Conviction Review." *Id.* at 715 (citing Ariz. R.Crim. P. 32.4(a)).

Having been sentenced on February 8, 2011, Petitioner had through Monday, May 9, 2011 to file his PCR notice.[2]  It is true that on May 6, 2011 Petitioner filed a Motion to

---

[1]  Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).  Except as discussed hereinafter, Petitioner proffers no argument that any of these apply.

[2]  Arizona applies Arizona Rule of Criminal Procedure 1.3 to extend "the time to file an appeal by five days when the order appealed from has been mailed to the interested party

Extend (Exhibit W) the time to file his PCR petition.  But, that motion was never ruled upon, and no extension was ever granted.  Accordingly, Petitioner's time to file expired on May 9, 2011.

Petitioner's only Notice of Post-Conviction Relief was that filed July 11, 2011 (Exhibit Y).  That Notice was not accepted as timely, and was ultimately ruled by the Arizona Court of Appeals to have been untimely.  (Exhibit VV, Order on Pet.Rev.) Accordingly, Petitioner's time for review expired on May 9, 2011.

### b)    Discovery of Factual Predicate

Although the conclusion of direct review normally marks the beginning of the statutory one year, section 2244(d)(1)(D) does provide an alternative of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  Thus, where despite the exercise of due diligence a petitioner was unable to discover the factual predicate of his claim, the statute does not commence running on that claim until the earlier of such discovery or the elimination of the disability which prevented discovery.  Thus, the commencement is not delayed until actual discovery, but only until the date on which it "could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).

Petitioner's claims originate from assertions that he had a valid driver's license at the time of one or more of his offenses.  However, Petitioner proffers nothing to show that he only discovered the factual predicate of this claim some time after May 9, 2011. Indeed, he asserts that he had argued to trial counsel Kristopher Califano at the time of trial that he had a valid drivers license.  (Reply, Doc. 14 at 12.)

---

and commences to run on the date the clerk mails the order."  *State v. Zuniga*, 163 Ariz. 105, 106, 786 P.2d 956, 957 (1990).  However, that rule does not apply to in-court rulings.  "We again stress that in most criminal cases, the defendant and counsel for both sides will be present in court when the appealed order, judgment, or sentence is entered and that in this opinion we deal only with cases in which notice is, in fact, given by mail."  *Id.* at 957, n. 2.  Petitioner was present when his sentence was issued. (Exhibit B, Sentence 2/8/11 at 1.)  Accordingly, no additional time would apply.

To the extent that Petitioner refers to recently discovered evidence, *i.e.* records regarding his license, such evidence is not the "factual predicate" of his claims, but rather the evidence of those facts.  *See Flanagan v. Johnson*, 154 F.3d 196, 198-99 (5th Cir.1998) (receipt of trial counsel's affidavit irrelevant where knowledge of facts supporting claim of ineffectiveness previously known to defendant).   Moreover, even if such records amounted to the factual predicate, Petitioner's PCR Notice related that he had obtained those records as of June 28, 2011.  (Exhibit X, PCR Notice, Exhibit A, at 1.)  The difference of 40 days (after May 9, 2011) would not be sufficient to make his petition timely.

### c)      Conclusion re Commencement

Therefore, Petitioner's one year began running on May 10, 2011, and without any tolling expired on May 9, 2012.

## 3.      Timeliness Without Tolling

Petitioner's Petition (Doc. 1) was filed on June 19, 2015.

However, "[i]n determining when a pro se state or federal petition is filed, the 'mailbox' rule applies. A petition is considered to be filed on the date a prisoner hands the petition to prison officials for mailing."  *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010). The declaration in Petitioner's Petition reflects that his Petition was delivered to prison officials for mailing on June 17, 2015.  (Petition, Doc. 1 at "11.")  Respondents proffer nothing to counter that declaration.  Accordingly, the undersigned finds that the Petition was delivered to prison officials for mailing June 17, 2015, and thus should be deemed filed as of that date.

As determined in subsection (1) above, without any tolling Petitioner's one year habeas limitations period expired no later than May 9, 2012, making his June 17, 2015 Petition over three years delinquent.

1

### 4.    **Statutory Tolling**

2      The AEDPA provides for tolling of the limitations period when a "properly filed

3   application for State post-conviction or other collateral relief with respect to the pertinent

4   judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  This provision only applies to

5   state proceedings, not to federal proceedings.  *Duncan v. Walker*, 533 U.S. 167 (2001).

6      Petitioner's only PCR proceeding was that arising from his PCR notice filed July

7   11, 2011 (Exhibit X).  However, that proceeding was dismissed as untimely.  (*See*

8   Exhibit HH, M.E. 2/8/12; Exhibit VV Mem. Dec. 4/1/14.)

9      Statutory  tolling of the habeas limitations period only results from state

10   applications that are "properly filed," and an untimely application is never "properly

11   filed" within the meaning of § 2244(d)(2).  *Pace v. DiGuglielmo*, 544 U.S. 408 (2005).[3]

12      It is true that the Arizona Court of Appeals addressed alternative grounds for

13   disposing of the Petitioner's PCR proceeding, e.g. preclusion, the merits, etc.  However,

14   even if the state court provides alternative grounds for disposing of the state application,

15   a ruling that the application was untimely precludes it from being "properly filed" and

16   tolling the limitations period.  *Carey v. Saffold*, 536 U.S. 214, 225-26 (2002).

17      Accordingly, Petitioner's only PCR proceeding was not "properly filed" for

18   purposes of statutory tolling, and thus did not result in any such tolling.

19

### 5.    **Equitable Tolling**

20

21      "Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is

22   available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's

23   control make it impossible to file a petition on time' and 'the extraordinary circumstances

24

25   [3] On the other hand, the fact that the application may contain procedurally barred claims
    does not mean it is not "properly filed." "[T]he question whether an application has been
26   'properly filed' is quite separate from the question whether the claims contained in the
    application are meritorious and free of procedural bar."  *Artuz v. Bennett*, 531 U.S. 4, 9
27   (2000).  Thus, Petitioner's arguments that Arizona's rules are not consistently applied,
    which might be relevant to the independence and adequacy of state procedural bar relied
28   upon to preclude habeas review of a timely claim, has no application to application of the
    tolling provisions under § 2244(d)(2).

were the cause of his untimeliness.'"  *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted).  "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.' "  *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002)  (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.). Petitioner bears the burden of proof on the existence of cause for equitable tolling.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

Petitioner addresses four bases for equitable tolling: (1) the state court's delay in ruling on his motion to extend the time for filing his PCR (Reply, Doc. 14 at 1-2); (2) his *pro se* status (*id.* at 2); (3) ineffectiveness of counsel was ineffective for failing to advise Petitioner to file a protective habeas petition and motion to stay (*id.*); and (4) the requirement that he first exhaust his state remedies (*id.* at 5).

**Delay in Ruling on Motion to Extend** – The failure of the state court to rule on Petitioner's motion to extend is not an extraordinary circumstance.  Litigants filing eleventh hour motions to extend routinely face the option of either rushing to meet the deadline or assuming the risk that the motion will ultimately be denied and the delayed filing found untimely.  Petitioner does not suggest that it was impossible for him to file his PCR notice by May 9, 2011, merely that he relied upon his motion to extend.  That was not an extraordinary circumstance beyond Petitioner's control.

Moreover, Petitioner was not diligent in the face of the PCR court's delay.  He did

not proceed to file within the un-extended deadline.  He did not promptly file his habeas petition upon discovering that the motion had not been granted, and his PCR petition was untimely.  Instead, he persisted through the state proceeding for the next three and a half years after the prosecution filed its PCR Response arguing untimeliness (Exhibit FF at 4), and over 3 years after the PCR court dismissed the proceeding as untimely (Exhibit KK, M.E. 5/16/12), and then waited over 16 months after the Arizona Court of Appeals ruled the petition untimely (Exhibit VV, Mem. Dec. 4/1/14) before filing his federal petition.

**_Pro Se_ Status** – Petitioner points to his *pro se*  status.  "It is clear that *pro se* status, on its own, is not enough to warrant equitable tolling." *Roy v. Lampert,*  465 F.3d 964, 970 (9th Cir. 2006).  A prisoner's "proceeding *pro se* is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim."  *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000).   *See also Rasberry v. Garcia,* 448 F.3d 1150, 1154 (9th Cir. 2006) ("a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling").  "[I]gnorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir.1999).

**Ineffective Assistance of Counsel** – Petitioner complains that counsel failed to advise him to file a protective habeas petition and a motion to stay.  In the face of the questions regarding the timeliness of Petitioner's PCR proceeding, such an approach was likely Petitioner's only hope of having his habeas claims heard.  Presumably, failure to advise Petitioner to do so was negligent.

However, although an attorney's behavior can establish the extraordinary circumstances required for equitable tolling, mere negligence or professional malpractice is insufficient. *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir.2001).  A "garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline does not warrant equitable tolling.' "  *Holland v. Florida*, 560 U.S. 631, 651-652 (2010). Rather, the attorney's misconduct must rise to the level of extraordinary

14

1   circumstances. *Id.   See e.g. Holland v. Florida*, 130 S. Ct. 2549, 2564 (2010) (habeas

2   attorney's repeated failures to respond over a period of years to a client's inquiries, and

3   demands for timely action, might establish equitable tolling).

4           Petitioner points to no such extraordinary misconduct by his counsel.

5           **Exhaustion Requirement** – Petitioner argues that he was required to first exhaust

6   his state remedies before proceeding with his federal habeas petition.   In *Pace v.*

7   *DiGuglielmo*, 544 U.S. 408 (2005), the Supreme Court analyzed the potential catch-22

8   between the habeas limitations period and the exhaustion requirement, where a state

9   petitioner has filed a state post-conviction relief proceeding which may ultimately be

10  deemed untimely, thus not properly filed, and resulting in the expiration of his habeas

11  limitations period.   "A prisoner seeking state postconviction relief might avoid this

12  predicament, however, by filing a 'protective' petition in federal court and asking the

13  federal court to stay and abey the federal habeas proceedings until state remedies are

14  exhausted." *Id.* at 416.   Apart from the insufficient complaint of ineffective assistance

15  of counsel, Petitioner proffers no reason why this avenue was not available to him.

16          **Conclusion re Equitable Tolling** – Based upon the foregoing, the undersigned

17  finds no basis for equitable tolling.

18

19  **6.    Actual Innocence**

20          **Applicable Standard** - To avoid a miscarriage of justice, the habeas statute of

21  limitations in 28 U.S.C. § 2244(d)(1) does not preclude "a court from entertaining an

22  untimely first federal habeas petition raising a convincing claim of actual innocence."

23  *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013).   To invoke this exception to the

24  statute of limitations, a petitioner "'must show that it is more likely than not that no

25  reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935

26  (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).   This exception, referred to as the

27  "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so

28  strong that a court cannot have confidence in the outcome of the trial unless the court is

also satisfied that the trial was free of nonharmless constitutional error.' " *Id.* at 1936 (quoting *Schlup,* 513 U.S. at 316).

**Petitioner's Claim** - Petitioner's claim of actual innocence turns on whether he had a suspended, etc. license on the dates of his DUIs.  He pled guilty to violating Ariz. Rev. Stat. § 28-1383(a)(1), Aggravated Driving Under the Influence.   That statute provides:

> A person is guilty of aggravated driving…while under the influence of intoxicating liquor or drugs if the person [drives under the influence] while the person's driver license or privilege to drive is suspended, canceled, revoked or refused or while a restriction is placed on the person's driver license or privilege to drive as a result of violating [the DUI statutes].

A.R.S. § 28-1383(A)(1).   Petitioner does not dispute that he was driving under the influence, but simply argues that his license was not suspend, canceled, or revoked, etc. at the time of two of his offenses.  Petitioner's DUI offenses were committed on July 9, 2008, October 17, 2008 and March 5, 2009.  He argues that at the time of the March 5, 2009 offense and July 9, 2008 offense, his license was not suspended or revoked, and thus he could not have been convicted of the felony of aggravated DUI for his actions on those dates.

**New, Reliable Evidence Required** - Moreover, an actual innocence analysis does not invite a simple reconsideration of the evidence at trial, but requires the presentation of evidence that is new and reliable.   The petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence," *House v. Bell*, 547 U.S. 518, 537 (2006), that will support a credible claim of procedural actual innocence.

"To meet this standard, [the Petitioner] must first furnish 'new reliable evidence ... that was not presented at trial.' " *Griffin v. Johnson,* 350 F.3d 956, 961 (9th Cir. 2003) (quoting *Schlup*, 513 U.S. at 324).

Respondents argue that to be "new" the evidence cannot be merely newly presented, but must be newly discovered. (Response, Doc. 42 at 5, *et seq.*)  Because the undersigned ultimately concludes that the evidence presented by Petitioner does not

qualify as reliable evidence affirmatively showing Petitioner's innocence, the level of required newness of the evidence need not be resolved.

**Proof of Actual Innocence** - Further, a petitioner may not simply allege that such evidence exists, but must present it to the habeas court, through affidavit of the witness, etc. *See Weeks v. Bowersox*, 119 F.3d 1342, 1352-1353 (8th Cir. 1997). It is not sufficient for a petitioner to claim actual innocence if he fails to proffer anything other than conclusory allegations to support a claim of actual innocence. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir.1994) (stating that unsupported, conclusory allegations do not warrant habeas relief).

Moreover, in the context of a claim of procedural actual innocence, the Court is not bound by the normal rules of evidence (e.g. hearsay, etc.), but by its own evaluation of the trustworthiness of evidence. "*Schlup* makes plain that the habeas court must consider ' 'all the evidence,' ' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.' *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327–328).

**Applicability to Pleading Defendants** - It is unclear whether the actual innocence gateway applies to defendants who were not convicted at trial, but pled not guilty or no contest. *See Smith v. Baldwin,* 510 F.3d 1127, 1140 (9th Cir. 2007). *But see Bousley v. U.S.,* 523 U.S. 614, 624 (1998) (remanding for development of actual innocence to excuse procedural default of pleading federal defendant). Respondents argue it does not. For purposes of this Report and Recommendation, the undersigned presumes that the actual innocence gateway applies to Petitioner's guilty plea convictions.

**Showing on Dismissed Counts Not Required** - It is true that, "[i]n cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of  actual innocence must also extend to those charges." *Bousley*, 523 U.S. at 624. Here, Petitioner's plea resulted in dismissal of other charges of aggravated assault and resisting arrest, and of charges of aggravated DUI based upon

drugs.

The aggravated assault charge was under Ariz. Rev. Stat. § 13-1204(A)(8) (intentional, knowing or reckless assault on person known to be a peace officer engaged in executing duties).  (Exhibit I, Indictment at 2.)  Because the indictment alleged physical injury, to the officer, the offense was a Class 5 felony.  Ariz. Rev. Stat. § 13-1204(E) (2009).  *See* 2008 Ariz. Legis. Serv. Ch. 301 (H.B. 2207), Ariz. Sess. Laws 2008, Ch. 301, § 52 (eff. January 1, 2009).  *Cf.* 2010 Ariz. Legis. Serv. Ch. 97 (H.B. 2062), Ariz. Sess. Laws 2010, Ch. 97, § 1 (adopted April 21, 2010) (modifying aggravated assault on officer with physical injury to Class 4 felony).  The resisting arrest charge was under Ariz. Rev. Stat. § 13-2508, which is, at most, a class 6 felony.  *See* Ariz. Rev. Stat. § 13-2508(B).

Thus, these dismissed charges were a Class 5 felony and a Class 6 felony.  In contrast, the charges to which Petitioner plead guilty were Class 4 felonies.  (*See* Exhibit V, Plea Agreements; Exhibit B, Sentence.)  Thus, Petitioner need not also show his actual innocence of the less serious charges of aggravated assault and resisting arrest.

Respondents further argue that Petitioner should be required to make a showing of actual innocence of the equally serious charges of aggravated DUI based on the presence of drugs in his body, pursuant to Ariz. Rev. Stat. § 28-1381(A)(3) and 28-1383(A)(1). (Response, Doc. 42 at 11 *et seq.*)  (*See* Indictments, Exhibits E, I, L.)  Because guilt on those counts would also have depended upon Petitioner's driving on a suspended or revoked license, *see* Ariz. Rev. Stat. § 28-1383(A)(1), this Court need not resolve whether innocence of those charges would also be required to resolve Petitioner's claims of procedural actual innocence.

**Relief Only Applies to Claims for which Innocence Shown** - Although deciding the issue as "a question of first impression," the Ninth Circuit has concluded "both as a matter of law and of common sense, that a demonstration of actual innocence under *Schlup* cannot excuse a petitioner's procedural default for more than the counts as to which he has shown actual innocence." *Vosgien v. Persson*, 742 F.3d 1131, 1136 (9th

Cir. 2014).  *See Alvarez v. Gipson*, 2014 WL 1017607, at *2 (N.D. Cal. Mar. 12, 2014) (applying *Vosgien* to actual innocence gateway to statute of limitations).

Thus, because Petitioner only proposes his innocence of the March 5, 2009 and July 9, 2008 offenses, those would be the only convictions upon which he could now receive relief.

**Evidence of Actual Innocence Considered by State Court** - Respondents argue that this is a finding of fact entitled to a presumption of correctness under 28 U.S.C. § 2254(d)(2).  (Answer, Doc. 11 at 17.)

In the state courts, Petitioner presented records with his PCR Petition (Exhibit EE) showing that on March 27, 2009 the Motor Vehicle Division issued a rejection of the order of suspension served by law enforcement on March 5, 2009, based upon the insufficiency of the affidavit submitted in support of the suspension.  (*Id.* at Exhibits.) That, of course, fails to establish that his license was not otherwise suspended on March 5, 2009, the date of the offense Petitioner challenges.  However, he also presented what appears to be an Arizona MVD report showing that he had a license issued on December 2, 2009, and on January 13, 2009, the suspension of his license was deemed "satisfied."

In rejecting Petitioner's PCR Petition for Review, the Arizona Court of Appeals opined:  "Further, the documents Parker asserts are newly discovered do not prove that his license was not suspended, canceled, revoked, refused, or otherwise restricted at the time of the offenses." (Exhibit VV, Mem. Dec. at 3.)

Respondents argue that this is a finding of fact entitled to a presumption of correctness under 28 U.S.C. § 2254(d)(2).  However, § 2254(d) only applies to "any claim that was adjudicated on the merits in State court proceedings."  Here, Petitioner does not make a "claim" of actual innocence.  Instead he proffers his actual innocence as cause to excuse his untimely petition.  *C.f. In re Davis*, 557 U.S. 952 (2009) (discussing applicability of § 2254(d)(1) to substantive claim of actual innocence).

While Section 2254(d) (deference to state court decision on merits) has no application in the context of a *Schlup* claim because it pertains only to a "claim that was

adjudicated" in state court, Section 2254(e)(1) does come into play because it refers to the "determination of a factual issue"-that is, to a state court's findings of fact, rather than its conclusions of federal law." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).  *See also Reed v. Stephens,* 739 F.3d 753, 773 n. 8 (5th Cir.) *cert. denied*, 135 S. Ct. 435 (2014) (listing similar decisions from 3rd 6th, 8th, 9th, 10th, 11th, albeit some unpublished). Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

However, "the reach of the presumption of correctness in new § 2254(e)(1) is restricted to pure questions of historical fact. State decisions applying law to facts are governed by § 2254(d)(1); however, factual findings underlying the state court's conclusion on the mixed issue are accorded a presumption of correctness." *Lambert v. Blodgett*, 393 F.3d 943, 976 (9th Cir. 2004).  "Consequently, a federal court reviewing a state court conclusion on a mixed issue involving questions both of fact and law must first separate the legal conclusions from the factual determinations  that underlie it." *Id.* at 977-78.  "Forging the precise distinction between a 'factual' and a 'mixed' determination has proven difficult and contentious." *Id.* at 976.  " '[A]n issue does not lose its factual character merely because its resolution is dispositive of the ultimate constitutional question.'" *Id.* (quoting *Miller v. Fenton*, 474 U.S. 104, 113 (1985)).

Here, the Arizona appellate court made no specific, express findings of fact. Instead, it simply stated its conclusion that Petitioner's document did "not prove" his license was not suspended "at the time of the offenses."  (Exhibit VV, Mem. Dec. 4/1/14 at 3.)  Nonetheless, "[i]mplicit factual findings are presumed correct under § 2254(e)(1) to the same extent as express factual findings." *Taylor v. Horn*, 504 F.3d 416, 433 (3rd Cir.2007).  Implicit in the Arizona court's conclusion was a finding that the records supplied by Petitioner in that proceeding did not credibly show his license was in good

1   standing at the time of any of the offenses.[4]

2       Although Petitioner now presents new evidence he contends shows the license in

3   his name (Willie Parker) was in good standing, he proffers nothing to show that the state

4   court's rejection of the evidence before it was wrong, particularly after considering the

5   evidence concerning the Maurice Davis license.  He certainly fails to present clear and

6   convincing evidence to overcome the presumption of correctness which applies to such

7   finding of fact.

8       Accordingly, if Petitioner is to now establish his actual innocence, he must do so

9   on the basis of evidence not before the state court.

10       **Ability to Consider New Evidence** – Respondents imply that this Court's review

11   of Petitioner's procedural claim of actual innocence is limited to the record before the

12   trial court.  If § 2254(d) applied, *e.g.* if this court were considering a substantive claim of

13   actual innocence, then the question would be limited to the evidence before the state

14   court.  But this is not such a claim.

15       Moreover, while the presumption of correctness under § 2254(e)(1) applies, the

16   limits on evidentiary hearings (and other forms of "new" evidence) on claims established

17   in 28 U.S.C. § 2254(e)(2) do not apply to Petitioner's assertions of  procedural actual

18   innocence.

19       Its applicability is limited by the introductory language of
20   subsection (2), which states that "[i]f the applicant has *failed to
     develop* the factual basis of a *claim* in State court proceedings, the
21   court shall not hold an evidentiary hearing on the claim unless [the
     requirements of subsections (A) and (B) are met]." 28 U.S.C. §
22   2254(e)(2) (emphases added). We reject the Commonwealth's
     argument that the plain meaning of this introductory language
23   encompasses evidence that might establish cause and prejudice or a
     miscarriage of justice and that Cristin's failure to develop that
24   evidence before the state courts now bars an evidentiary hearing on
     the subject.

25   *Cristin v. Brennan*, 281 F.3d 404, 413 (3d Cir. 2002).  *See also Teleguz v. Pearson*, 689

26

27   _____
     [4] Although the Arizona court was considering Petitioner's innocence of *all* the offenses,
28   (Exhibit VV, Mem. Dec. at 2), there is nothing to suggest that the court would not have
     acted if innocence of less than all, or even one, conviction had been shown.

F.3d 322, 331 (4th Cir. 2012) ("Our sister circuits considering whether the limitation on evidentiary hearings in § 2254(e)(2) applies to *Schlup* claims have overwhelmingly found that it does not."); *Sibley v. Culliver*, 377 F.3d 1196, 1207 n.9 (11th Cir.2004); and *Coleman v. Hardy*, 628 F.3d 314, 320 (7th Cir. 2010).  *See generally Griffin v. Johnson*, 350 F.3d 956, 966 (9th Cir.2003) (acknowledging but declining to address the issue of whether § 2254(e)(2) governs a request for a hearing on actual innocence); *Jaramillo v. Stewart*, 340 F.3d 877 (9th Cir. 2003) (same).  *But see Morris v. Dormire*, 217 F.3d 556, 560 (8th Cir.2000) (rejecting argument that district court abused its discretion in failing to hold an evidentiary hearing on claim of actual innocence where petitioner made no attempt to satisfy § 2254(e)(2)).  Thus, Petitioner remains free to proffer additional evidence in support of his claim of actual innocence, notwithstanding any failure to adequately develop the state court record.

**New Evidence of Innocence** –   The new evidence Petitioner originally presented in support of his claim of procedural actual innocence consisted of the MVD reports from August, 2014 tending to show his license in his own name being in good standing on March 5, 2009 and July 9, 2008, and then the MVD employee affidavits supplied by Respondents affirming those facts.

Respondents have since provided police reports and pre-sentence reports showing that Petitioner had also been issued a license under the name of Maurice Davis, which has been suspended since 1992.

To rebut those reports, Petitioner has provided his own ambiguous denials, and a single MVD records search report from 2008 denying the issuance of a license in the name of Maurice Davis.  (Doc. 47 at Exhibit A.)   Such evidence is not the kind of  "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence," *House v. Bell*, 547 U.S. 518, 537 (2006), that will support a credible claim of procedural actual innocence.

Perhaps, if the burden of proof lay upon Respondents, as Petitioner argues it does, the Court would be inclined to: (1) adopt a favorable view of Petitioner's filings as

1  asserting he never obtained a license in the name of Maurice Davis; and (2) rely upon the

2  2008 MVD report as creating a reasonable doubt as to whether a license had ever been

3  issued in the name of Maurice Davis.

4        But with a claim of procedural actual innocence, the burden of proof lies with

5  Petitioner.  "A petitioner's burden at the gateway stage is to demonstrate that more likely

6  than not, in light of the new evidence, no reasonable juror would find him guilty beyond

7  a reasonable doubt." *House*, 547 U.S. at 538.

8        Here, there is substantial and trustworthy evidence showing that: (1) a license had

9  been issued in the name of Maurice Davis, and subsequently revoked (*i.e.* the recent

10 MVD Affidavit and the police reports and presentence reports); and (2) that such license

11 had been issued to the person who is now the Petitioner in this case (the police reports

12 and presentence reports).  The trustworthiness of that evidence derives from the lack of

13 personal bias, and the fact that it was derived on disparate occasions by different people

14 (e.g. in the 2008 prosecution, in the 2009 prosecution, and in the most recent MVD

15 Affidavit).

16       Moreover, Petitioner's own disavowal of the Maurice Davis license is not

17 credible.  Aside from his bias, Petitioner's credibility is diminished by his failure to

18 make a plain statement that he never obtained a license in that name, as opposed to

19 obtusely arguing that the "Maurice Davis license was never issued to Willie Lee Parker."

20 (Doc. 49 at 3.)  *See House*, 547 U.S. at 537 ("the District Court need not 'test the new

21 evidence by a standard appropriate for deciding a motion for summary judgment,' but

22 rather may 'consider how the timing of the submission and the likely credibility of the

23 affiants bear on the probable reliability of that evidence'") (quoting *Schlup*, 513 U.S. at

24 331-332).

25       Under these circumstances, the undersigned finds no basis to conclude that no

26 reasonable juror would have convicted Petitioner in light of his disavowals of the

27 Maurice Davis license and the single records request response denying the issuance of a

28 license to Maurice Davis.

Based upon the foregoing, the undersigned concludes that Petitioner has failed to show his procedural actual innocence.

**7.      Summary re Statute of Limitations**

Taking into account the available statutory tolling, Petitioner's one year habeas limitations period commenced running on May 10, 2011, and expired on May 9, 2012, making his June 19, 2015 Petition over three years delinquent.  Petitioner has shown no basis for additional statutory tolling, and no basis for equitable tolling or actual innocence to avoid the effects of his delay.  Consequently, the Petition must be dismissed with prejudice.

**C.      OTHER DEFENSES**

Because the undersigned concludes that Petitioner's Petition is plainly barred by the statute of limitations, Respondents other defenses are not reached.

## IV.    CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on procedural grounds.  Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.     RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion for Release Pending Review, filed May 11, 2016 (Doc. 50) be **DENIED**.

**IT IS FURTHER RECOMMENDED** the Petitioner's Petition for Writ of Habeas Corpus, filed June 19, 2015 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI.     EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth

Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: June 8, 2016

15-1130r RR 15 11 12 on HC.docx

James F. Metcalf
United States Magistrate Judge

26